UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V | ) | Cause No. 2:16 CR 160 |
| | ) | |
| JOHN CORTINA | ) | |

PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, comes now the United States of America, by Assistant United States Attorney Philip C. Benson, the defendant, John Cortina, and Kevin Milner, attorney for the defendant, and show the Court they have entered into a plea agreement as follows:

1.  I, John Cortina, have the ability to read, write and speak the English language.

2.  I have received a copy of the Indictment and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in this case.

3.  I have told my lawyer the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment and believe and feel that my lawyer is fully informed as to all such matters. My lawyer has counseled and advised with me as to the nature and elements of every accusation against me and as to any possible defenses I might have.

4.   I understand that I am entitled to have all of my rights which may be involved in this matter explained to me, and that I have the right to have any questions I may have answered for me.

5.   I understand by pleading guilty I waive certain rights. The rights described below have been explained to me, as well as the consequences of my waiver of these rights:

- a.   If I persisted in a plea of not guilty to the charge against me, I would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. I have the right to a jury trial. However, I may waive a jury trial in writing with the approval of the Court and the consent of the government.

- b.   If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Myself and my attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that a defendant is presumed innocent, and that it could not convict unless, after hearing all the evidence, it was persuaded of my guilt beyond a reasonable doubt, and that it was to consider each count of the Indictment separately.

- c.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of my guilt beyond a reasonable doubt.

- d.   At a trial whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against me. I would be able to confront those government witnesses and my attorney would be able to cross-examine them. In turn, I could present witnesses and other evidence in my own behalf. If the witnesses for me would not appear voluntarily, I could require their attendance through the subpoena power of the Court.

e. At a trial, I would have a privilege against self-incrimination so that I could decline to testify, and no inference of guilt could be drawn from my refusal to testify.   If I desired to do so, I could testify in my own behalf.

f. At trial and at every stage of the proceedings, I have a right to an attorney, and if I could not afford an attorney one would be appointed for me.

g. In the event that I should be found guilty of the charge(s) against me, I would have the right to appeal my conviction on such charge(s) to a higher court.

6. I understand that under the U.S. Sentencing Guidelines, the Court, in light of an investigation by the United States Probation Office, will determine the applicable sentencing guideline range, and that the Court will determine all matters, whether factual or legal, relevant to the application of the sentencing guidelines including, but not limited to, the adjusted offense level, the relevant circumstances in the case, the criminal history points and category, relevant conduct, the grouping of offenses, victim-related adjustments, role in the offense adjustments, career offender status, criminal livelihood and acceptance of responsibility as well as possible departures from the application of the U.S. Sentencing Guidelines.   I understand that the U.S. Sentencing Guidelines are advisory only, and that the specific sentence to be imposed upon me will be determined by the judge after a consideration of a pre-sentence investigation report, input from counsel for myself and the government, federal sentencing statutes, and the U.S. Sentencing Guidelines.

7. Notwithstanding the above, I have, with the assistance of counsel, entered into the following agreement with the United States Attorney's Office:

a.  I will plead guilty to Count Two of the Indictment filed in this cause. Count Two charges me with paying a bribe to a public official, James Snyder, the Mayor of Portage, Indiana, in violation of Title 18, United States Code, Sections 666(a)(2). I am pleading guilty to Count Two of the indictment, because I am in fact guilty of the offense charged in this Count.

b.  I understand that Count Two carries a maximum term of incarceration not to exceed 10 years, a fine not to exceed $250,000.00, or a combination of both imprisonment and a fine. Plus, in addition to any other penalty imposed, a special assessment of $100.00. Furthermore, I understand that in addition to the sentence imposed upon me for my conviction, the Court can impose a term of supervised release of up to three (3) years;

c.  As part of this agreement, I agree to cooperate fully, truthfully, and candidly with the United States Attorney or his designated representatives as to my knowledge of or involvement in, any violation of federal or state law. I understand that the nature of my cooperation herein shall be defined by the United States Attorney; this cooperation may include, but is not limited to, my agreement, if requested to do so, to discuss fully, truthfully, and candidly with representatives of the United States Attorney including designated law enforcement agencies, my knowledge of all criminal activities, and to testify truthfully and completely before any grand jury, and at any hearings, trials, or other judicial proceedings;

d.  I understand that at the time of sentencing, the United States Attorney will advise the Court of the nature, extent and value of my cooperation;

e.  As part of this agreement, I understand that the United States Attorney may seek to defer my sentencing until such time as my cooperation is complete;

f.  The United States of America and I have also entered into the following agreements which are **not binding** upon the Court, and I understand that if the Court does not follow these agreements I will not be allowed to withdraw my guilty plea:

   i   The United States of America and I agree that in recognition of my acceptance of responsibility for my offense conduct, I am entitled to a two-level reduction in offense level. The United States of America and I further agree that I have assisted authorities in the investigation or prosecution of my own misconduct by timely

4

        notifying the United States Attorney's Office of my intention to plead guilty, and we agree that if my offense level is 16 or greater, the government will move at sentencing for me to receive an additional one-level reduction in offense level.

ii. Provided I fulfill the terms of this agreement, and do not perform any act or engage in conduct that is inconsistent with my agreement to cooperate or with my acceptance of responsibility for my conduct, at sentencing, the government may file a request for a downward departure from the sentencing guideline range; I agree not to challenge the extent of the government's departure request; I understand that the decision regarding whether to grant a departure, or the extent of any departure lies within the discretion of the Court, and that this agreement does not constitute a promise that the judge will grant a departure, or that the judge will impose any particular sentence;

iii. The United States of America recommends that the Court should impose a sentence upon me equal to the minimum of the applicable guideline range;

iv. While I agree not to challenge the extent of the government's departure request, I do reserve the right to present any additional 18 U.S.C. 3553(a) factors relevant to my sentencing. The government also reserves the right to present any evidence it deems necessary to challenge any evidence I present under 18 U.S.C. 3553(a).

v. The defendant further admits the following:

Between approximately January 2016 and continuing through approximately November 2016, I knew the following to be true:

I met first met James Snyder in approximately when he ran for Mayor of Portage, Indiana. Snyder came to my business, Kustom Auto Body, seeking support for his mayoral bid. Eventually, I offered to support Snyder for Mayor during his campaign. As part of my support, I gave financial contributions to his campaign, worked on his fundraisers, displayed his political yard signs on my property, distributed his campaign literature, and drove him to numerous political functions. Initially, I believed him to be a good friend and I enjoyed being with him and other Portage politicians. I believed that it was important for my business that I financially support certain Portage politicians and Mayor Snyder.

5

In addition to attending numerous political fundraising events, I also spent time attending city council meetings. Often times after these city council meetings, I would go to dinner with Snyder and other members of his administration. As time passed, I began to realize that it was during these dinners, and other social encounters, that much of the real city business was discussed and decided. Almost all of the time when I was attending these dinners, I was the individual who ended up paying the bill for everyone. I felt that I was being taken advantage of, but realized that if I did not foot the bill for these dinners I would no longer be invited and it would be detrimental to me obtaining any future city business.

After being involved with a towing business that was removed from the Portage tow list, I wanted to get back on the tow list with another towing firm. However, I soon realized that I would have to pay money to get back on the Portage tow list. Between approximately November 2015 and January of 2016, I had numerous discussions with Snyder about getting on the Portage tow list. I indicated to Snyder that I had Individual A's towing company lined up to replace the previous tow firm I had been working with. During these discussions Snyder would say things such as; it takes time, we'll see, let me work on it. It appeared to me that Snyder kept delaying his decision whether or not to let me back on the tow list.

However, in approximately January of 2016 things changed. During one of my several conversations with Snyder about getting on the Portage tow list, Snyder requested from me money for legal fees to pay his attorney. Snyder directed me to get two cashier's checks, one payable to "Citizens for Snyder" for $10,000, and the other payable to "Round Table for Snyder" for $2,000. Snyder said his campaign was going to pay part of his legal fees. I agreed to obtain these checks and give them to Snyder. I knew if I did this, I would be on the Portage tow list. Prior to obtaining these checks, I explained to Individual A that we would have to make this $12,000 payment to Snyder to get on the tow list. Since it was his tow company that would partially benefit from the city towing business, Individual A agreed to contribute $6,000 of the $12,000 payment.   On January 27, 2016, prior to meeting with Individual A, I went to MainSource Bank and obtained the above-described cashier's checks. I directed the teller at MainSource bank as to the amount, payee, and memo information that was to appear on the checks.

The next day, January 28, 2016, I met with Individual A and obtained $6,000 cash from him.   I then called Snyder and told Snyder that "Christmas is here" and "I got Christmas." Snyder then requested that I come to his mortgage office within the next fifteen minutes. Immediately

6

after this phone call, I left my business and drove to Preferred Capital, Snyder's Mortgage Company. At that office, I gave Snyder the two checks. Within a few days, I spoke with Snyder regarding getting on the tow list. Snyder no longer put off the answers to my towing question. Snyder now indicated that we were all good, and that we would soon be towing for Portage.

At all times, I knew this $12,000 payment to Snyder was a bribe given specifically in exchange for Snyder giving me, and Individual A, a part of the Portage towing. At no time did Snyder and I discuss this $12,000 being a loan. The word "loan" with the initials "JS" written on the $10,000 check were not written by me. I directed the teller to type the word "donation" on the memo line of the check and that is what was written on the memo line when I handed it to Snyder.

g. I understand that if I violate any of the provisions of this plea agreement, the United States Attorney may at its option either (1) ask the Court to make a determination that I have breached my agreement to cooperate, in which event I will at sentencing lose the benefit of the non-binding promises made by the government in this agreement and have no right to withdraw my guilty plea, or (2) seek to have the Court declare this entire plea agreement null and void, in which event I can then be prosecuted for all criminal offenses that I may have committed;

h. I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

i. I also agree to waive all rights, whether asserted directly or through a representative, to, after sentencing, request or receive from the United States any further records, reports, or documents pertaining to the investigation or prosecution of this matter; this waiver includes, but is not limited to, rights conferred by the Freedom of Information Act and the

Privacy Act of 1974;

8. I am prepared to state to the Court the facts in this matter that cause me to believe that I am guilty of the Count(s) to which I have agreed to plead guilty.

9. I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me.

10. I declare that I offer my plea of guilty freely and voluntarily and of my own accord, and no promises have been made to me other than those contained in this agreement, nor have I been threatened in any way by anyone to cause me to plead guilty in accordance with this agreement.

11. I understand and acknowledge that this agreement, once filed with the court, is a public document and available for public viewing.


s/ John Cortina                                              s/ Kevin Milner
Defendant                                                    Attorney for Defendant


APPROVED:

MATTHEW WHITAKER
ACTING ATTORNEY GENERAL

John R. Lausch, Jr.
UNITED STATES ATTORNEY


By:    s/ Philip C. Benson
       Assistant U.S. Attorney
       U.S. Attorney's Office
       Northern District of Indiana